**SYSTEM MANAGEMENT ARTS INCORPORATED, Plaintiff,**

v.

**AVESTA TECHNOLOGIES, INC. and David Zager, Defendants.**

**No. 97 CIV 8101 RWS.**

United States District Court,
S.D. New York.

April 4, 2001.

Proskauer Rose by Nancy Kilson, Kenneth Rubenstein, New York City, for Plaintiff.

Skadden, Arps, Slate, Meagher & Flom by Edward V. Filardi, Daniel A. DeVito, New York City, for Defendants.

## OPINION

SWEET, District Judge.

Plaintiff System Management Arts Incorporated ("Smarts") has moved for an order revising this Court's previous opinion denying Smarts' motion for partial summary judgment against defendants Avesta Technologies, Inc. ("Avesta") and David Zager (collectively, the "Defendants"), on the grounds of newly-discovered evidence, pursuant to Federal Rule of Civil Procedure 54(b). For the reasons set forth below, the motion is denied.

### The Parties

The parties in this action are set forth in the previous opinion of this Court, familiarity with which is presumed. *See System Management Arts Inc. v. Avesta Technologies, Inc.*, 87 F.Supp.2d 258 (S.D.N.Y.2000) [hereinafter *"Smarts I"*].

### Prior Proceedings And The Decision In Smarts I

This action was initiated by the filing of a complaint by Smarts on October 31, 1997, alleging in relevant part that a computer program entitled "Trinity," developed by Avesta, directly infringes upon Smarts' patents-in-suit. The Defendants asserted several counterclaims and have contended *inter alia* that a software program developed by Morgan Stanley & Co., Inc. ("Morgan Stanley"), entitled "Delphi," would properly be considered "prior art" in this action and therefore that the patents-in-suit are invalid, pursuant to 35 U.S.C. § 102(a), (b), and (g).

On May 24, 1999, Smarts moved for partial summary judgment, seeking *inter alia* an order excluding Delphi as relevant prior art and determining, therefore, that no triable issue of fact exists with respect to patent invalidation based on that product.

In connection with the partial summary judgment motion, the Defendants submitted a declaration (the "Klener Declaration") from one Igor Klener ("Klener"). *Smarts I*, 87 F.Supp.2d at 267. In his declaration, Klener stated that he had obtained a "general understanding" of the Delphi program in 1993 or 1994 "from discussions with Morgan Stanley representatives and from viewing a Delphi user screen." *Id.*

*Smarts I* held that there was a triable issue of fact as to whether Delphi qualifies as prior art, based on its prior use and availability, and denied Smarts' motion for partial summary judgment in this regard. 87 F.Supp.2d at 262. In so holding, the Court observed that "[m]ost of the deposition testimony offered by the Defendants [on the issue of Delphi's prior use and availability] … comes from interested Avesta employees or principals, and remains uncorroborated," *id.* at 267, but that corroboration of prior demonstrations of the Delphi product was provided by the Klener Declaration, *id.* at 268.

On October 16, 2000, Smarts filed the instant motion, seeking revision of *Smarts I* on the ground that newly-discovered evidence reveals that Klener "could not and did not" corroborate Avesta's version of the facts concerning Delphi. Oral argument was heard on November 29, 2000, at which time the matter was marked fully submitted.

### Facts

These facts are gleaned from the declarations and other exhibits submitted by the parties. They do not constitute findings of the Court.[1]

---

1. As further explained herein, for purposes of determining whether the Klener Declaration must be disregarded *per se* on the grounds of bias, the Defendants assume arguendo that the newly-discovered evidence is as alleged by Smarts. However, for purposes of determin-

On September 18, 2000, Smarts deposed Klener. At the deposition it was revealed that, shortly before Klener signed the Klener Declaration, Avesta had invited him to participate in a private placement of Avesta stock. In addition, at the time of this invitation, Avesta anticipated an imminent initial public offering ("IPO") of its common stock, and Klener knew an IPO would be forthcoming. Later, when Avesta announced its merger with Visual Networks, Inc., Klener's 1999 investment in Avesta increased in value from $225,000 to $450,000. Furthermore, Klener considered Avesta's former president, Kam Saifi ("Saifi"), to be a friend, and Klener was also friendly with another Avesta executive, David Arbeitel ("Arbeitel"). Klener denied that any promise of reward was offered by Avesta in exchange for his declaration, and stated that the investment offer preceded any awareness on his part of the lawsuit or the possibility of providing a declaration.

## Discussion

### I. *The Motion Is Proper Under Rule 54(b)*

Rule 54(b) provides that, in the absence of entry of final judgment as to a claim or party,

> any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the

claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b).

The Defendants contend that the instant motion, while characterized as a motion under Rule 54(b), is actually a motion for reconsideration under Local Rule 6.3 and, therefore, is untimely because it was filed more than ten days after the *Smarts I* decision was docketed. *See* Local Civil Rule 6.3. The Defendants further contend that the decision in *Smarts I* was an order relating to the admissibility of evidence, while Rule 54(b) relates only to the adjudication of claims, and thus that Rule 54(b) is not an appropriate procedural vehicle.

 The instant motion is premised on evidence that was not available at the time *Smarts I* was decided.[2] A Rule 54(b) motion is not untimely under Local Rule 6.3 if the evidence upon which the motion is based is newly-discovered. *See Tran v. Tran,* No. 91 Civ. 6818, 1998 WL 19996, at *1–*2 (S.D.N.Y. Jan. 21, 1998); *cf.* James Wm. Moore, 10 *Moore's Federal Practice* § 54.25[4], at 54–86 to 54–87 and n. 14 (2d ed. 1998) (Rule 54(b) motion that does not present new evidence or legal arguments must be filed within time permitted by local rules).

As for the "adjudication of claims" argument, a similar contention by the Defendants was considered and rejected in deciding to address the original motion on the merits. *See Smarts I,* 87 F.Supp.2d at 261–62 ("The Defendants ... [contend] that the motion is really a premature *in limine* motion improperly disguised as one for summary judgment.... However, whether characterized as a proper motion

ing whether this evidence eliminates any triable issue of fact regarding the prior art contention, inferences are drawn in favor of the non-movants, as required.

2. The Defendants, in passing, aver that the only reason the evidence was not available was that Smarts chose not to pursue the relevant discovery until after *Smarts I* was decided. This contention is without merit.

for summary judgment or as a motion *in limine,* Defendants will nevertheless be required to offer admissible evidence sufficient to create a genuine issue for trial."). The language of Rule 54(b), which refers to "any order or other form of decision, however designated," does not warrant a different result here. Fed.R.Civ.P. 54(b). Therefore, the instant motion is both timely and procedurally proper, and will be decided on the merits.

## II. *The Corroboration Requirement*

■ In asserting patent invalidation based on prior art, the burden is on the Defendants to show by clear and convincing evidence that the patents-in-suit are invalid. *Finnigan Corp. v. International Trade Comm'n,* 180 F.3d 1354, 1365 (Fed. Cir.1999); *see Smarts I,* 87 F.Supp.2d at 262–63 (discussing legal standard). In meeting this burden, as explained in *Smarts I,*

> [m]ere testimonial evidence ... has traditionally been viewed with disfavor, and corroboration is required under [§ 102] 'regardless of whether the party testifying concerning the invalidating activity is interested in the outcome of the litigation ... or is uninterested but testifying on behalf of an interested party.'

*Smarts I,* 87 F.Supp.2d at 263 (discussing defendants' burden on § 102 prior art patent invalidation defense) (*quoting Finnigan,* 180 F.3d at 1367); *see also Woodland Trust v. Flowertree Nursery,* 148 F.3d 1368, 1371 (Fed.Cir.1998) ("Corroboration of oral evidence of prior invention is the general rule in patent disputes.") There are, however, "no formalistic restrictions on the form of corroborative evidence," and the "rule of reason" applies to this issue. *Smarts I,* 87 F.Supp.2d at 263. Oral testimony of someone besides the claimed inventor is one form of corroborat-

ing evidence that may be satisfactory, depending on the circumstances. *Id.*

Where corroborating evidence is offered in the form of witness testimony, the Federal Circuit Court of Appeals has endorsed consideration of the following criteria in determining whether the corroboration requirement has been satisfied: the relationship between the corroborating witness and the alleged prior user; the time period between the event and trial; the interest of the corroborating witness in the subject matter in suit; contradiction or impeachment of the witness's testimony; the extent and details of the corroborating testimony; the witness's familiarity with the subject matter of the patented invention and the prior use; the probability that a prior use could occur considering the state of the art at the time; the commercial value and impact of the invention on the industry. *Woodland Trust,* 148 F.3d at 1371; *see also Finnigan,* 180 F.3d at 1369 ("Cases like ... *Woodland Trust* correctly recognized that the level of interest of the testifying witness is an important consideration when such testimony is offered to corroborate another witness's testimony.").

## III. *Klener's Bias Does Not Render His Declaration Insufficient As A Matter Of Law To Provide Corroboration*

Smarts contends that the new evidence developed through Klener's deposition reveals that at the time of the Klener Declaration he was an interested witness. Indeed, according to Smarts, Klener and Avesta engaged in an outright *quid pro quo,* exchanging the Klener Declaration for the lucrative opportunity to invest in Avesta before the IPO, and Klener was good friends with Saifi and Arbeitel. Therefore, Smarts maintains, the Klener Declaration, as a matter of law, "could not and did not" corroborate Avesta's version of the facts, as propounded through the

testimony of "interested Avesta employees or principals," *Smarts I*, 87 F.Supp.2d at 266, concerning the alleged public use or disclosure of Delphi.

There are actually two theories embedded in Smarts' motion. The first is that if a corroborating witness is interested then that witness's testimony is therefore *per se* inadequate to satisfy the corroboration requirement. The second is that the corroborating witness evidence here, i.e., the Klener Declaration, is insufficient because of the circumstances surrounding this evidence, namely, the extent of Klener's bias in favor of Avesta, as well as the passage of time since his alleged viewing of Delphi.

▬ The contention that a corroborating witness's testimony must be discredited as a matter of law unless that witness is himself disinterested is inconsistent with the "rule of reason." *Woodland Trust*, 148 F.3d at 1371. The Federal Circuit Court of Appeals has specifically distinguished between the question of the necessity of corroboration *vel* non and the question of the adequacy of that evidence, with the latter being "a distinct inquiry involving an assessment of the totality of the circumstances" and in which inquiry the interest of the witness is one factor. *Finnigan*, 180 F.3d at 1369; *see Woodland Trust*, 148 F.3d at 1371. If testimony from an interested corroborating witness were insufficient as a matter of law, then this doctrine would have no purpose.

▬ Moreover, bias is a factor used to assess a witness's credibility, which is traditionally a matter for the finder of fact, including in the context here. *See Beachcombers, Int'l., Inc. v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154, 1160 (Fed.Cir. 1994) (in considering prior art defense jury

was "entitled" to believe testimony from allegedly biased witnesses because "these factors all related to credibility. We have no warrant to override the jury's decision on the basis of these factors. That would usurp the prescribed function of the jury"); *see also Amsted Indus. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 183 (Fed.Cir. 1994) (observing, in context of testimony regarding willfulness of patent infringement, that "[i]t is within the province of the jury to determine the credibility of a witness and the weight to be given to his testimony . . . .").

Smarts has urged that *Woodland Trust*, 148 F.3d 1368, in which testimony by biased witnesses was held insufficient as a matter of law to sustain a prior art defense, requires that its motion be granted. In that case, the Federal Circuit Court of Appeals reversed the district court's finding that a patent was invalid where that determination rested on the testimony of four witnesses who were relatives, friends, employees, or acquaintances of the defendant, and the asserted prior uses had ended twenty years before trial and were abandoned until the defendant reportedly learned of the plaintiff patentee's practices. *Id.* at 1369, 1373. However, the fact that the biased witnesses had appeared before the fact finder, i.e., the district court, which then had an opportunity to assess the credibility of those witnesses, underscores the flaw in Smarts' contention that Klener's testimonial evidence should not even go to the jury. Moreover, *Woodland Trust* did not hold that the district court erred in considering the biased witness evidence but, rather, concluded that based on various factors the evidence offered in support of the prior art defense was insufficient as a matter of law. *Id.*[3]

---

3. Similarly, in *Barbed–Wire Patent*, 143 U.S. 275, 284–85, 12 S.Ct. 443, 36 L.Ed. 154 (1892), and *Eibel Process Co. v. Minnesota &*

*Ontario Paper Co.*, 261 U.S. 45, 52, 60, 43 S.Ct. 322, 67 L.Ed. 523 (1923), also cited by Smarts, the purportedly biased witness testi-

Therefore, assuming arguendo that Klener was as biased towards Avesta as Smarts maintains he was, this fact does not render the declaration *per se* deficient as corroborating evidence. Rather, the evidence of bias should be considered by the jury in determining the credibility and weight to be assigned the corroboration provided by Klener.

 Nor is Smarts entitled to revision of *Smarts I* on the theory that the extent of Klener's bias, as well as the passage of time since he allegedly viewed the Delphi product, render the patent invalidation claim insufficient as a matter of law. Smarts avers that Klener is even more biased than the witnesses in *Woodland Trust,* 148 F.3d 1368, and that the passage of time, as in that case, also goes against the Defendants. The passage of time is not a matter of new evidence, of course, and is also far less substantial than it was in *Woodland Trust. See* 148 F.3d at 1373. Moreover, the Defendants have offered competent evidence in opposition to Smarts' characterization of Klener as biased, namely, Klener's denial that there was any *quid pro quo* and his statements regarding the timing of the invitation to participate in the private stock offering. The Defendants also advance a different interpretation of the evidence regarding Klener's personal relationships with Saifi and Arbeitel. These are matters which are properly resolved by the jury. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of inferences from the facts are jury func-

tions, not those of a judge."). Thus, although the Defendants have a high burden of proof with respect to their claim of patent invalidation—clear and convincing evidence—the newly-discovered evidence does not eliminate all genuine issues of material fact with respect to this issue.

### *Conclusion*

Therefore, for the reasons set forth above, the motion is denied.

It is so ordered.

---

mony was presented to the fact finder. Finally, *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1577 (Fed.Cir.1996), simply stands for the well-settled proposition that corroborating evidence is required where the inventor seeks to show prior inventorship by her own testimony, even though, in theory, fact finders could assess credibility of such testimony irrespective of any corroboration requirement. *See also Finnigan,* 180 F.3d at 1369 ("In any event, corroboration is required of any witness whose testimony alone *is* asserted to invalidate a patent, regardless of his or her level of interest.").